**SLATEN v. UNITED STATES.**
No. 14549.

United States Court of Appeals,
Fifth Circuit.
Jan. 15, 1954.

Irwin R. Kimzey, Clarkesville, Ga., V. D. Stockton, Clayton, Ga., for appellant.

J. Ellis Mundy, U. S. Atty., Lamar N. Smith, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Defendant below, appellant here, was charged in a six count indictment: with having devised a scheme and artifice to defraud, David Lang, Lewis Layton, and divers other persons interested in purchasing hydraulic presses, and persons engaged in lending money and financing business, and to obtain money and property by means of false and fraudulent pretenses, ventures, etc., as set out in the indictment; and with using the mails for the purpose of carrying out and attempting to carry out the scheme and artifice.

The cause coming on for trial before the court and a jury, the defendant, fully advised of his constitutional right to have counsel and stating that he was able to employ counsel but that he desired to conduct his own trial, was permitted to do so.

Throughout the trial the district judge was alert indeed zealous to protect the rights of the defendant and to assure him a fair trial. Time and time again with great patience and consideration, he assisted the defendant in getting his defenses before the jury as effectively as the facts and circumstances permitted. At no time was he impatient or sharp with him, nor did he hurry him along either in the trial or the argument to the jury following it. On the contrary, giving him the fullest latitude in putting in his proof and in arguing the case to the jury, and, with pains-

taking care to see that all his rights were preserved, he kept the defendant advised as to the way and manner in which his defense should be procedurally conducted so as to preserve his legal rights, including advising him to make a motion for verdict in the event of an appeal. The result is that the record shows no substantial procedural errors, indeed, none are claimed.

With one exception and that, in our opinion, not a very substantial matter, the evidence as to what had occurred, was not in dispute. The issue in the case was whether a substantial and material part of what had been said and done had been said or done with fraudulent intent as charged. The appeal is based upon, and solely upon, the claim that while the mailing occurred as charged, the evidence did not show the use of the mails in connection with a scheme to defraud, that is, it did not show that the defendant had devised a fraudulent scheme and gone about by false pretenses and representations to obtain money pursuant thereto.

The charge of the court fairly, fully, and precisely set out the law of the case, and the arguments fully discussed and analyzed the effect of the evidence in reference to the controlling question in the case, whether what was done, though some of it ought perhaps not to have been done, was nevertheless done not pursuant to a scheme to defraud and by the use of false pretenses, but honestly and fairly and without intent or purpose to defraud.

Due to some extent to the latitude allowed the defendant in conducting his examinations and cross-examinations, the record is rather large. Boiled down, however, to its substance and essence, the controlling testimony is not extensive. The claim of the prosecution below and here is not that the defendant's scheme was a fraud out of the whole cloth. It is not claimed in short that he did not have presses to sell and that he did not have business to conduct. Neither is it claimed that he hoped and endeavored to put on a wholesale swindle,

by which, giving nothing in return but empty promises, he would take the money of his victims away from them. The contrary is true.

It is conceded that defendant sold and delivered to Lang a hydraulic press. It is conceded, too, that he did have business with bakeries which made use of his presses, and that Lang, after buying the press which he bought, did considerable business with it. The claim is, though, and the proof supports the claim, that the scheme was that, instead of letting Lang obtain the fruits of the work he did with the press in accordance with the agreement made, the defendant had devised a scheme to obtain the major part of the proceeds, and that, pursuant to the scheme, he did collect the money due for the work done with the press and deprive Lang of his part of it.

As to Layton, who financed several of the ventures which defendant had, or claimed to have, with his presses by buying bills or pretended bills issued by bakeries or pretended bakeries, it is not claimed that defendant did not repay Layton a considerable part of the money he had advanced. It is in effect admitted that of the more than $11,000 advanced by Layton to purchase bills from defendant, defendant repaid some $6500. The claim is, though, that, in order to get the money from Layton which he needed to finance himself, defendant made pretended deals with concerns which did not in fact exist, using fictitious names as though they were real companies and issuing paper which had no real foundation in that some of his purported customers were only creatures of his own, acting under pretentious sounding names.

The defendant does not deny that he did use fictitious names. He justifies, though, on the grounds: that he was trying in a very short time to build a large business for his presses with bakery companies throughout the United States; that he had a valuable idea and instrument for its carrying out; and

that if Layton had not intruded into his legitimate business with uncalled for inquiries and Lang had not become angry with him, reporting him to the Post Office Inspectors and causing his arrest, he would have repaid every cent he owed and would have had a large and profitable business built up to the benefit of everyone.

The record furnishes support to his claim that his presses were actually in use, indeed in demand, and that he had little competition in his field, and that he had a real hope to make good, and it may be that in the broad sense of having an overall, an ultimate purpose to swindle and defraud, the government did not prove him a fraud doer.

But this was not the real issue tried. That issue was, did the defendant, intending to use false pretenses to obtain credit and make sales in his business devise the scheme with which he is charged, and did he, in pursuance thereof, use the mails to carry out the scheme.

We think the record amply supports the verdict that he did, and that because he did, he cannot claim that, because he had no malevolent intent to permanently defraud but a benevolent intent to make money for himself and those he dealt with, he should have been acquitted. The law does not permit one who obtains money by false pretenses to defend against their use by claiming that if he had been given a chance, not only would the money so obtained have been returned to the victims but in addition he and they would have reaped large profits from the business he was trying to build.

Whatever moral comfort appellant can take from the claim—and, if it is a fact, he should be able to take some—that his overall, his permanent purpose was not to overreach those he dealt with, and that his acts in obtaining money by false pretenses were caused by his unwillingness or, as he expresses it, his inability to wait until he could obtain funds through the normal growth of his business, this, as a defense to the charge,

will not avail him. For, the jury found, on evidence supporting the verdict: that he did devise a scheme to obtain money; that he obtained it by false pretenses; and that, by the use of the mails, he did bring the postal statutes against such practices and pretenses into operation.

The judgment is affirmed.